JAMES HENDRICKSON, APPELLANT, v. ALFRED AND ROSELLA GLASER, HUSBAND AND WIFE, APPELLEES.

283 N. W. 2d 41

Filed September 4, 1979. No. 42132.

McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, P.C., for appellant.

John C. Brownrigg of Eisenstatt, Higgins, Kinnamon, Okun & Stern, P.C., for appellees.

Heard before BOSLAUGH, WHITE, and HASTINGS, JJ., and HENDRIX and BUCKLEY, District Judges.

BUCKLEY, District Judge.

Plaintiff's petition seeks to quiet title in a certain parcel of land to which he claims title by adverse possession, and of which the defendants are record owners. Defendants' motion for summary judgment was sustained and plaintiff's petition was dismissed. From this order, plaintiff appeals. We affirm.

Plaintiff, James Hendrickson, and defendants, Alfred and Rosella Glaser, are respective record title owners of adjoining quarter sections of farmland, plaintiff's to the north of defendants'. Plaintiff's tract is described as the northwest quarter of the northeast quarter of Section 24, Township 20 North,

Range 9 West of the 6th P.M., in Greeley County, Nebraska. Defendants' tract is described as the southwest quarter of the northeast quarter of the same section. The contested parcel lies within the defendants' tract and is along the common boundary of the two quarter section tracts.

Plaintiff purchased his 40-acre tract at a referee's sale, pursuant to a partition action, on April 6, 1971. This sale was contested but upon appeal to this court was affirmed. See Glaser v. Weinberger, 188 Neb. 205, 196 N. W. 2d 113. Whereupon, the sale was confirmed, Hendrickson paid the purchase price, and he was given a referee's deed describing the 40 acres on April 21, 1972. On the same date he received a quitclaim deed describing the same 40 acres from Ida Weinberger, who, along with defendants Glasers, were the prior owners of the property. (Glasers instituted the partition action and contested the sale to Hendrickson.) No additional payment was made for the quitclaim deed from Mrs. Weinberger.

Plaintiff, however, claims in his petition that when he received the referee's deed and the quitclaim deed, he purchased not only the 40 acres described in the deeds, but in addition thereto, "all of that property on the south side of said 40 acres up to the original boundary fence line as established for the last twenty years or more * * *." He alleges that all the property owners for the past 20 years or more, prior to defendants' ownership, have considered the fence line as the division fence between the two quarter sections. Defendants deny that plaintiff's predecessors in title acquired any title to the contested portion of their quarter section by adverse possession.

Where one by mistake as to the true boundary line enters upon and takes possession of land of another, claiming it as his own to a definite and certain boundary, by an actual, open, exclusive, and contin-

uous possession thereof under such claim for 10 years or more, he acquires title thereto by adverse possession. Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 331.

It is established law of this state that when a fence is constructed as a boundary line between two properties, and parties claim ownership of land up to the fence for the full statutory period and are not interrupted in their possession or control during that time, they will, by adverse possession, gain title to such land as may have been improperly enclosed with their own. McCain v. Cook, 184 Neb. 147, 165 N. W. 2d 734; Abood v. Johnson, 189 Neb. 87, 200 N. W. 2d 20.

On the motion for summary judgment, the only evidence presented, in addition to the deeds previously mentioned, was plaintiff's deposition. Though his testimony is somewhat sketchy on the point, it may be assumed that it supports his contention that his predecessors in title to the 40 acres he purchased had acquired title to the adjoining contested property by adverse possession, since the land north of the mistaken boundary line fence, along with the tract plaintiff purchased, had been farmed as one tract. Even if it is assumed that title by adverse possession vested in plaintiff's predecessors, his contention that he purchased this property through the deeds must fail by operation of law, whether he relies on the referee's deed or the quitclaim deed, or both.

After the running of the statute, the adverse possessor has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period. McCain v. Cook, *supra*; Converse v. Kenyon, 178 Neb. 151, 132 N. W. 2d 334.

At 3 Am. Jur. 2d, Adverse Possession, § 243, p. 342, it is stated: "Title by adverse possession is not affected by recording statutes. In other words, ad-

verse title once obtained is good even as against those holding a title recorded as provided by statute, or a title derived from a recorded title, without regard to whether or not the adverse holder continued in actual possession after having perfected his title by adverse possession.''

Hendrickson is not the grantee of any deed specifically describing the disputed parcel. Nor does he claim title by a subsequent disseisin of his own. Therefore, his claim of title must rely upon the quitclaim deed from Mrs. Weinberger or the referee's deed, or both. His claim must fail, since neither conveyance by operation of law can vest title to the contested parcel in him.

The quitclaim deed of Mrs. Weinberger passes nothing. She was a party to the partition action. The 40 acres she quitclaimed was sold at the partition sale over a year earlier.

A confirmation of a partition sale disposes of all the interests of everyone in the suit to the purchaser from the moment the confirmation is pronounced *by relation back to the date of the sale of the referee.* Drake v. Morrow, 140 Neb. 258, 299 N. W. 545.

It follows that upon the confirmation of the sale herein, Mrs. Weinberger's interest in the 40 acres was disposed of by, *and at the time of,* the sale by the referee to Hendrickson. She has no interest in the property conveyed by a quitclaim deed over a year later. Her deed was, in legal effect, a nullity.

The partition action involved only the 40 acres purchased by Hendrickson at the referee's sale. Hendrickson does not claim that the property ordered to be sold included the contested land, or that the referee's deed did not correctly describe the property sold. In response to the question, ''What are you attempting to do in this lawsuit?'' he answered, ''Acquire the land that I haven't purchased.''

Hendrickson apparently claims that the referee's deed conveyed to him not only the quarter section as

described in the deed, but the contested parcel adjoining to the south, because the predecessors in title, due to the original boundary line fence, had considered the contested parcel to be a part of the quarter section described. Hendrickson seems to concede now that the contested parcel lies outside the calls of the deed, but claims that since title vested by adverse possession, the entire tract passed to him by the partition sale and referee's deed.

While we have not heretofore specifically addressed the question of what property is conveyed by a judicial sale, the law seems well settled that the deed pursuant to a judicial sale, absent mistake or fraud, conveys only that property that lies within its calls. See, 50 C. J. S., Judicial Sales, § 39d, p. 651; 68 C. J. S., Partition, § 213d, p. 348. Also, in 50 C. J. S., Judicial Sales, § 35e, p. 635, it is stated: "The deed is to be construed with the judicial proceedings of which it forms a part. It conveys no greater title than the order of sale on which it is based, although absolute in form, and is void in so far as it includes land the decree did not authorize to be sold, the grantee receiving nothing more than color of title thereto. On the other hand, *the deed conveys only that which is described therein;* yet, where through the mistake of an officer it does not include that which was intended to be conveyed, the purchaser may obtain relief in equity." (Emphasis supplied.)

In Johnson v. Hubbard, 299 Ky. 604, 186 S. W. 2d 406, Johnson sought to quiet title to certain property, claiming to be the record owner pursuant to a deed from G. M. Adams. Many years before, in a suit between Adams and others claiming an interest in a certain parcel of land, the court entered judgment partitioning the property. After the judgment, but before the master commissioner's deed was executed, Adams deeded his interest in the property to Johnson. This deed, however, described land greater than the property partitioned, and included

the land in dispute. Whereupon, the commissioner's deed was made directly to Johnson, who replaced Adams in the partition suit. It described only the property partitioned and described in the partition judgment.

In finding against Johnson, the court stated, "Even if Adams had owned an undivided interest in the land in dispute at the time he pretended to deed it to Johnson, the Commissioner's deed executed in pursuance of the judgment of the Court partitioning the land, and which did not include the land in dispute, was binding on Johnson. His remedy in respect to any error of the Court in the description of the property was by appeal from the judgment in the partition suit, which was not perfected. * * * It is obvious that appellant's claim to the property by record title must be rejected."

Hendrickson does not assert any mistake in the property described in the referee's deed. Nor does he contend now that the property involved in the partition action, as described, extends to include the parcel in question. Accordingly, the land he purchased at the partition sale and which was ultimately deeded to him by the referee does not include the parcel he claims title to because (1) the property is not included within the calls of the deed, and (2) no claimed title by adverse possession can pass to him by that deed.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.