STATE NATIONAL BANK AND TRUST COMPANY, WAYNE, NEBRASKA, TRUSTEE, APPELLEE, V. EUGENE JACOBSEN, A SINGLE PERSON, APPELLANT.

358 N.W.2d 743

Filed November 30, 1984.   No. 83-780.

Ronald J. Albin, for appellant.

Kenneth M. Olds of Olds, Swarts and Ensz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Eugene Jacobsen, defendant and cross-petitioner, appeals the decision of the district court for Cedar County, namely, judgment quieting title in State National Bank and Trust Company (State National). We reverse and remand with directions.

Originally, an east-west, section line road separated the south half of Section 28 from the north half of Section 33, adjacent tracts. Gradually, the section line road arched southward with further encroachment on Section 33. The tract in dispute, containing 2.3 acres, was formed as a result of the road's bow and the east-west line between Sections 28 and 33. A three-strand barbed wire fence ran along the north side of the road. When and by whom the fence was installed are undisclosed.

As described, the bowed road and barbed wire fence existed when Floyd and Jessie Root acquired the north half of Section 33 in 1947.

In 1949 Eugene Jacobsen was residing with his parents, Axel and Helga Jacobsen, when Axel purchased the south half of Section 28. Sometime between 1949 and 1958, Axel and Eugene temporarily removed the barbed wire fence to install a culvert north of the road but replaced the fence at its previous location after installing the culvert. Referring to the tract in dispute, Floyd Root testified that Axel Jacobsen "made it part of his pasture," "pastured" the 2.3 acres, and "treated it like his own."

In view of the fence-road condition and sometime before 1964, Floyd Root had a dispute with Axel Jacobsen regarding

the tract formed by the bow in the road and told Axel he wished "he [Axel] would move his fence back and get off" the tract in question. Axel "never set [the fence] back" but continued to use the disputed tract as pasture for Jacobsen livestock.

On account of Axel Jacobsen's death in 1964, title to the land in Section 28 devolved upon Helga Jacobsen and was subsequently acquired by Eugene Jacobsen in 1974 through a deed from the executor of Helga's estate. On July 26, 1975, Roots conveyed their land in Section 33 to State National as trustee.

In 1971 Roots had leased their land in Section 33 to Marvin Jensen for a share of the crop produced on the land south of the road. Jensen testified that from 1971 to 1978 Eugene Jacobsen's cattle grazed on the grass north of the fence and road. In fact, since 1949, the disputed tract has served as a pasture for Jacobsen cattle, either Axel's or Eugene's. In 1977 Eugene Jacobsen cultivated the 2.3 acres. However, because the ground was too wet due to drainage, Jacobsen could not grow crops on the tract in dispute.

Another fence dispute arose in 1978 when Floyd Root directed Jensen to move the fence from the road to a site near the east-west line between Sections 28 and 33.

State National filed suit to quiet title in 1982. Eugene Jacobsen filed a cross-petition claiming title by adverse possession. At trial State National showed it had paid taxes on the entire tract encompassing the 2.3 acres since acquisition of the real estate from Roots in 1975. Jacobsen also showed he had paid taxes on the 2.3 acres after the renewed dispute or incident in 1978.

In its judgment entered in favor of State National, the district court recited: "We hold for the Plaintiff and find that the Plaintiff and its immediate grantors and predecessors in title have and have had continuous possession of the said real estate under continuity of title for 10 years last past or since July 26, 1975." The district court then quieted title to the 2.3 acres in State National.

Adverse possession actions are equitable in nature; therefore, we review the record de novo and reach an independent conclusion without reference to the findings of the

trial court. *Hardt v. Eskam, ante* p. 81, 352 N.W.2d 583 (1984); *Wiedeman v. James E. Simon Co., Inc.*, 209 Neb. 189, 307 N.W.2d 105 (1981). "The burden is on one who claims title by adverse possession to prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for the statutory period, namely, 10 years." *Hardt v. Eskam, supra* at 82, 352 N.W.2d at 585.

When Roots acquired their tract in 1947 and Axel Jacobsen purchased his real estate in Section 28 in 1949, the fence restricted access from the road and Root land to the tract in dispute. Jacobsens used the 2.3 acres as a pasture in their farming operations until 1977. Thus, for nearly 30 years all but the Jacobsens were excluded from the 2.3 acres. Before Eugene Jacobsen's abortive cultivation of the disputed tract, the character of the 2.3 acres was definitely pasture. Pasturing cattle on the disputed tract supplied the possession necessary to sustain Jacobsen's claim of adverse possession. See *Wiedeman v. James E. Simon Co., Inc., supra* (sufficiency of possession depends on the character and reasonable use of adversely claimed land). The incident involving Axel Jacobsen and Floyd Root circa 1964, namely, Axel's refusal to remove the fence as requested by Root, was Axel's emphatic assertion of ownership to the 2.3 acres. Further, as we held in *Hendrickson v. Glaser*, 204 Neb. 492, 494-95, 283 N.W.2d 41, 43 (1979):

> Where one by mistake as to the true boundary line enters upon and takes possession of land of another, claiming it as his own to a definite and certain boundary, by an actual, open, exclusive, and continuous possession thereof under such claim for 10 years or more, he acquires title thereto by adverse possession.

See, also, *Purdum v. Sherman*, 163 Neb. 889, 81 N.W.2d 331 (1957). The preponderance of the evidence demonstrates that Eugene Jacobsen has satisfied each element required for acquisition of title by adverse possession. After one has acquired title by adverse possession, the adverse possessor has an indefeasible title which can only be divested by his conveyance of the land to another or by a subsequent disseisin for the statutory limitation period. *Hendrickson v. Glaser,*

*supra.*

State National points to its payment of taxes in support of its claim to the 2.3-acre tract. Payment of taxes is a circumstance which may be considered with all other circumstances in determining the question of adverse possession. *Ziemba v. Zeller*, 165 Neb. 419, 86 N.W.2d 190 (1957). However, in the case before us, payment of taxes as a factor is greatly outweighed by the other attendant circumstances. In the final analysis, State National lacked Roots to support its claim to the tract in dispute.

Upon the record presented to this court, we find that the judgment of the district court quieting title in State National is incorrect and must be reversed. We find that Eugene Jacobsen by adverse possession has acquired title to the tract in dispute. Therefore, the judgment of the district court is reversed and this matter is remanded to the district court, which shall, consistent with this opinion, enter judgment in favor of Eugene Jacobsen on his cross-petition regarding his title by adverse possession.

REVERSED AND REMANDED WITH DIRECTIONS.